Appeal No. 14-36025

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRUCE HAMPTON, *et al*, | Appeal No. 14-36025 |
| Plaintiffs - Appellants, | |
| v. | D.C. No. 2:12-cv-00470-AA<br>U.S. District of Oregon, Pendleton |
| FRED STEEN, *et al*, | |
| Defendants - Appellees. | |

**OPENING BRIEF OF
PLAINTIFFS - APPELLANTS**

On Appeal from the Opinion and Order dismissing
Plaintiffs'/Appellants' Third Amended Complaint
in this action on the 28th day of October, 2014.

Honorable Judge Ann Aiken
Chief Judge, U.S. District Court

D. ZACHARY HOSTETTER, OSB No. 100541  Attorneys for
BENJAMIN D. BOYD, OSB No. 105854   Plaintiffs-Appellants
Hostetter Law Group, LLP      Bruce Hampton and
203 E. Main St., Suite 2/P. O. Box 400   Venese Hampton
Enterprise, OR 97828

Further Listing of Counsel:

DAVID H. ANGELI, OSB No. 020244       Attorney for
Angeli Law Group LLC       Plaintiffs-Appellants
121 SW Morrison Street, Suite 400       Bruce Hampton and
Portland, OR 97204       Venese Hampton

JANET M. SCHROER       Attorney for
Hart Wagner, LLP       Defendants-Appellees
1000 SW Broadway, 20th Floor       Fred Steen, Wallowa
Portland, OR 97205       County, Wallowa County
      Sheriff's Office, and Paul
      Castilleja

DEFENDANT/APPELLEE

Lloyd Trackwell, Jr.       *Pro Se*
4830 Woodhaven Dr.
Lincoln, NE 68516

**TABLE OF CONTENTS**

I.      TABLE OF AUTHORITIES ............................................   6

II.     STATEMENT REGARDING ORAL ARGUMENT ……………   10

III.    JURISDICTIONAL STATEMENT ...............................   11

IV.     STATEMENT OF THE ISSUES ................................   12

V.      STATEMENT OF THE CASE ...................................   13

VI.     SUMMARY OF THE ARGUMENT ...........................   22

VII.    STANDARD OF REVIEW .......................................   25

VIII.   ARGUMENT……………………………………………….   26

   A. THE    HAMPTONS'   DETAILED   FACTUAL   AND   LEGAL
      ALLEGATIONS AMPLY SATISFY THE PLEADING REQUIREMENTS
      FOR EACH OF THE HAMPTONS' CLAIMS ……………….   26

   B. THE HAMPTONS PROPERLY PLEADED THEIR 42 U.S.C. § 1983
      CLAIMS …………………………………………………………   28

       1. The Hamptons properly pleaded the factual allegations and legal bases
          supporting their First § 1983 Claim – deprivation of protected
          property and liberty interests…………………………   28

           a. The Hamptons pleaded specific factual allegations supporting
              their First § 1983 Claim……………………………..   28

           b. The Hamptons properly pleaded the deprivation of protected
              property and liberty interests……………………..   30

               i. The Hamptons' contractual relationships are protected
                  property interests……………………………..   31

               ii. The Hamptons' business goodwill is a protected property
                   interest……………………………………..   32

      iii. The Hamptons' right to engage in property development is a protected liberty interest…………………..   34

    c. The Hamptons' right to engage in property development without arbitrary government interference is a protected due process right…………………………………………….   36

  2. The Hamptons properly pleaded the factual allegations and legal bases supporting their Second § 1983 Claim – retaliation for petitioning for redress of grievances…………………………………………..   39

  3. The Hamptons properly pleaded the factual allegations and legal bases supporting their Third § 1983 Claim – "defamation-plus"…   41

  4. The Hamptons properly pleaded the factual allegations and legal bases for their Fourth § 1983 Claim – substantive due process…...   43

  5. The Hamptons properly pleaded the factual allegations and legal bases supporting their Fifth § 1983 Claim – retaliation by wrongful initiation of civil proceedings…………………………………...   45

C. THE HAMPTONS PROPERLY PLEADED THEIR CLAIMS FOR VIOLATIONS OF 18 U.S.C. §§ 1962-1968 (RICO)…………….   47

  1. The Hamptons alleged Appellees' conduct showing the existence of a RICO enterprise (elements 1 and 2 of a RICO claim) …….   48

  2. The Hamptons alleged Appellees' pattern of racketeering activity (elements 3 and 4 of a RICO claim)……………………….   50

  3. The Hamptons satisfied Rule 9(b) particularity requirements..   51

D. THE DISTRICT COURT ERRED BY DISMISSING THE HAMPTONS' CLAIMS WHEN FED. R. CIV. P. 12(g)(2) BARRED TRACKWELL'S SUCCESSIVE RULE 12 MOTIONS…………………………….   52

E. THE DISTRICT COURT ERRED BY DISMISSING THE HAMPTONS' 15 U.S.C.A. §§ 1692-1692p (FDCPA) CLAIM *SUA SPONTE*……..   54

F. THE HAMPTONS PROPERLY PLEADED THEIR FDCPA CLAIM AGAINST TRACKWELL.…………………………………… 57

    1. The Hamptons' FDCPA claim satisfies with the pleading requirements…………………………………….. 57

    2. The Hamptons' FDCPA Claim is not time barred………….. 58

G. AT A MINIMUM, THE DISTRICT COURT ERRED IN DISMISSING THE HAMPTONS' CLAIMS WITHOUT GIVING THE HAMPTONS LEAVE TO AMEND THEIR PLEADINGS…………………….. 59

H. THE DISTRICT COURT ABUSED ITS DISCRETION IN QUASHING THE HAMPTONS' SUBPOENAS………………………………. 61

    1. The District Court failed to provide proper legal or factual analysis for its decision to quash the Hamptons' subpoenas……………. 62

    2. Appellees failed to carry their burden to show that the Hamptons' subpoenas were unreasonable and oppressive……………… 64

        a. The Hamptons' subpoenas are reasonably calculated to lead to the discovery of admissible evidence……………….. 64

        b. The Hamptons' subpoenas are not overbroad……….. 66

        c. The Hamptons' subpoenas are not an invasion of privacy.68

        d. The District Court quashed the Hamptons' subpoenas on grounds not raised by Appellees…………………….. 69

I. THE DISTRICT COURT ABUSED ITS DISCRETION BY ENTERING A PRE-FILING ORDER AGAINST THE HAMPTONS……………. 70

IX. CONCLUSION ................................................................................. 73

X. STATEMENT OF RELATED CASES …………………………… 74

XI. CERTIFICATE OF COMPLIANCE ................................................. 75

**TABLE OF AUTHORITIES**

**CASES**

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 n.2 (9th Cir. 1988)..…………………………………………………………………………..53

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………..26, 27, 28, 30, 47, 57

*Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978) ….46 fn.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).…………… …………..26, 27, 58

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)……………….. …...40

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)………34, 35

*Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)……………………………43

*Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir. 1997)……………. ….25

*Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 126 (1992) ………….. …43

*Conn v. Gabbert*, 526 U.S. 286, 292 (1999)…………... ………………………… 37

*De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)………...70, 71, 72, 73

*Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014)…………… ……60

*Dittman v. California,* 191 F.3d 1020, 1029 (9th Cir. 1999)……………...36, 39 fn.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)…………………...…………………………………………………...60, 61

*Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007)…..38, 39 fn.

*Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1155 n.5 (10th Cir. 2001) …………………………………………………………………… 46 fn.

*F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)……….............................69

*Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)…………...............................39

*Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966)………………..61, 64

*Handy v. Lane County*, 585 F. App'x 570 (9th Cir. 2014),……....................59, 60

*Heathman v. U.S. Dist. Court for Cent. Dist. of California*, 503 F.2d 1032, 1035 (9th Cir. 1974)…………………………………........................................65

*Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999) ………………………………………………….......................42

*Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000)………….…….….50

*In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)…………………………...71

*Jefferson v. Tuteur*, 261 F. App'x 10, 11 (9th Cir. 2007)…………………….39

*Karamanos v. Egger*, 882 F.2d 447, 452 n.2 (9th Cir. 1989)……………...……56

*Knox v. Potter*, 130 F. App'x 918, 919 (9th Cir. 2005)…………………….….70

*Lantz v. Crate*, 268 Fed. Appx. 548, 550 (2008)………………………………33

*Lee v. City of Los Angeles*, 250 F.3d 668, 683 n.7 (9th Cir. 2001)……………….56

*Lee v. Mitchell*, 152 Or. App. 159, 180, 953 P.2d 414, 427 (1998)……….45-46, fn.

*Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)………..30, 31

*Mantia v. Hanson*, 190 Or. App. 412, 419, n.6 79 P.3d 404, 408 (2003)….…45, fn.

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007)…..70, 71

*Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007)……………47, 48, 49

*Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998)…………………….……25, 35

*Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974)………………………..45

*Perry v. Rein,* 215 Or. App. 113, 125, 168 P.3d 1163, 1170-71 (2007)………...…45

*Perry v. Sindermann*, 408 U.S. 593, 601 (1972)……………………....…31, 32

*Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975)………………………………………………………..……61

*San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.,* 825 F.2d 1404, 1408 (9th Cir. 1987)……………………………………………..31

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) …………………………………………………………32-33, 39, 46

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)……………..……51-52

*Timberline Nw., Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998)……………...……52

*Truax v. Raich*, 239 U.S. 33, 41 (1915) …………………………………..34

*United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) …………….72 fn.

## STATUTES

15 U.S.C. §§ 1692-1692p (FDCPA) ……......11, 18, 23, 54, 55, 56, 56-57 fn., 57, 58

18 U.S.C. §§ 1962-1968 (RICO) …………………………………...…11, 22, 47

28 U.S.C. § 1291 ……………………………………………...…….....11

28 U.S.C. § 1331…………………………………………………...…….…11

28 USC 1441 …………………………………………………………….11

42 USC § 1983……………………………………………………...…11, …18, 22, 28, 29, 30, 31, 32, 34, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 46 fn., 47, 56

ORS 65.534(1) …. …………………………………………..……33

ORS 65.484(1)(d)(A) ………………………………………………......33

ORS 307.020(1)(a)(D) …………………………………………..… 33

## RULES

FRAP 4(a) …………………………………………………………..11

FRCP 8(a) ………………………………………………… 23, 26, 27, 58

FRCP 9(b) ………………………………………………...23, 51, 52

FRCP 10(c) …………………………………..……………...…28, 41 fn.

FRCP 12(b)(1) … …………………………………………………….……...…..54, 55

FRCP 12(b)(6) …. …………………………………12, 23, 25, 27, 30, 47, 55, 56, 59, 60

FRCP 12(g)(2) …………………………………………...…23, 52, 53, 53 fn., 54

FRCP 12(g), advisory committee note to 1966 amendment ………………….52-53

FRCP 26(b)(1) ……………………………………………………….…..65

FRCP 45(b) …………………………………………………………….…61

FRE 201(b) …………………………………………………………....72 fn.

## OTHER AUTHORITIES

*Black's Law Dictionary* (8th ed. 2004)…………………………………………..33

Wright and Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 *Quashing or Modifying a Subpoena* (3d ed.)………………………………………………...64

# STATEMENT REGARDING ORAL ARGUMENT

This Court should permit oral argument for the following reasons:

1) This appeal affects the Hamptons' constitutionally protected liberty and property interests, and constitutional rights to access the courts and to petition for redress of grievances;

2) At least one of the dispositive issues in the Hamptons' appeal has not been authoritatively decided by this Court, *see infra* at 39, § VIII(B)(1)(c) n.2;

3) The District Court denied the Hamptons' request for oral argument on Appellees' motions to dismiss, ER 38, *see* Doc. 166;

4) This Court's decisional process would be significantly aided by oral argument because the Court could question counsel regarding the complex procedural history and facts of both this case and related litigation.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because Appellants raised claims for damages arising under 42 U.S.C. § 1983, 18 U.S.C. §§ 1962-1968, and 15 U.S.C. §§ 1692-1692p. The District Court had subject matter jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. 1441(c). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291.

The District Court's opinion and order dismissing Appellants' Third Amended Complaint is a final and appealable judgment that disposed of all Appellants' claims. The District Court issued its opinion and order on October 28, 2014. ER 1-38. The District Court entered judgment on October 28, 2014. Doc. 233. Appellants timely filed a Notice of Appeal on November 25, 2014, pursuant to Fed. R. App. P. 4(a)(1)(A). ER 41-44.

## ISSUES PRESENTED FOR REVIEW

1.  Did the District Court err by granting Appellees' motions to dismiss, where the District Court ignored the Hamptons' numerous well-pleaded factual and legal allegations, failed to assume the veracity of the Hamptons' well-pleaded allegations, and neglected to determine whether those well-pleaded allegations plausibly give rise to an entitlement to relief?

2.  Did the District Court abuse its discretion by quashing the Hamptons' subpoenas, where the District Court failed to provide proper analysis for its decision and Appellees failed to demonstrate that the Hamptons' subpoenas were unduly burdensome?

3.  Did the District Court abuse its discretion by entering a pre-filing order against the Hamptons, without compiling an adequate record for review, without narrowly tailoring the order, and without providing the Hamptons prior notice and an opportunity to be heard on the matter?

**STATEMENT OF THE CASE**

**Statement of Facts**

On or about August 29, 2007, Appellee Lloyd Trackwell ("Trackwell") entered into an agreement to serve as a debt collector for the American Bank of Missouri ("ABM") in seeking collection of a debt allegedly owed by Appellants Venese Hampton and Bruce Hampton ("the Hamptons") to ABM. ER 107; *see* ER 59 ("Trackwell was a duly appointed agent of [ABM]"); Doc. 29-2 ¶ 21 (same). ABM agreed to pay Trackwell 45% of any monies Trackwell collected on the alleged debt. Neither Bruce Hampton nor Venese Hampton were ever indebted to ABM. ER 206.

At all material times herein, Trackwell has acted as an informant and agent for Appellees Fred Steen ("Steen"), Wallowa County, and Wallowa County Sheriff's Office ("WCSO"). ER 246 (Trackwell's stipulation … "as an agent and informant for Wallowa County and [WCSO]"); ER 85 (Dep. of Fred Steen at 7, l.1-8 ("I consider [Trackwell] an informant."); and ER 89 (Dep. of Trackwell at 11:24-11:49 and 13:24-13:32).

In 2007, Steen and WCSO instructed Trackwell that, as WCSO's agent and informant, he should report "everything that squeaks or moves" about the Hamptons to Steen and WCSO. ER 213, ER 125 n.2 (same, *citing* ER 89). Beginning in July 2009, Steen, WCSO, and Appellee Wallowa County conspired

with and assisted Trackwell in a relentless campaign to force the Hamptons to pay the alleged "debt" through unlawful debt collection practices, defamation, harassment, stalking, humiliation, and extortion. ER 208 ¶ 17.

On or about August 10, 2010, ABM terminated their relationship with Trackwell after Wallowa County Circuit Court entered an injunction prohibiting Trackwell from collection activities against the Hamptons. ER 108. In January 2011, ABM abandoned their claims that the Hamptons owed any debt to ABM. ER 109. ABM's abandonment of its claims, ABM's termination of its relationship with Trackwell, and the court's injunction did not stop Trackwell. ER 125-126. Trackwell continued his destructive "debt" collection efforts without ABM, but with the assistance of Steen, WCSO, and Appellee Paul Castilleja ("Castilleja"), who, beginning in 2011, conspired with Steen, WCSO and Wallowa County in assisting Trackwell's "debt" collection efforts. ER 208-209, ER 126.

Trackwell attempted to collect the alleged "debt" from the Hamptons, with the assistance of Steen, Castilleja, WCSO, and Wallowa County, through various illegal and outrageous means, including: filing suit with ABM against the Hamptons on September 1, 2008, which action terminated in favor of the Hamptons on January 24, 2011, ER 207, ER 214; filing suit against the Hamptons on April 15, 2011, which action terminated in the Hamptons' favor, ER 214; filing suit with Steen against the Hamptons on May 13, 2011, which action terminated in

the Hamptons' favor, ER 214-215; meeting regularly with Steen and Castilleja at WCSO's office in Enterprise, Oregon, to coordinate their conspiracy, ER 215; interfering with the Hamptons' real property transactions, ER 207 ¶ 15(b); contacting the Hamptons' pastor and church members concerning the alleged debt, *Id.* ¶ 15(c); falsely asserting the Hamptons had committed criminal acts, *Id.* ¶ 15(d); falsely threatening the attachment of the Hamptons' property, *Id.* ¶ 15(e); making false statements concerning the Hamptons' financial obligations and conditions, *Id.* ¶ 15 (f); making false representations about the character and amount of the alleged debt, *Id.* ¶ 15(g); using deceptive means to obtain information concerning the Hamptons, *Id.* ¶ 15 (h); threatening to communicate false credit information to others, *Id.* ¶ 15 (i); filing false reports against the Hamptons with the Oregon Department of Consumer and Business Services, the Oregon State Police, the Oregon Department of Justice, the Internal Revenue Service, the Federal Bureau of Investigation, and the Financial Crimes Enforcement Network of the United States Department of the Treasury, ER 206 ¶ 13, ER 208 ¶ 15(m); by stalking the Hamptons and their family members, with Steen's assistance, *Id.* ¶ 15(n), ER 209-210 ¶ 23; which led to Wallowa County Circuit Court's issuance of a stalking protective order against Trackwell, ER 90; which led to Trackwell being charged with criminal stalking, ER 222, and Trackwell being convicted of two counts of violating the stalking order, for which

he received two consecutive six month sentences of imprisonment and three years of probation, ER 98-104, ER 184; conducting surveillance of the Hamptons with Steen's and WCSO's assistance, ER 209-210 at ¶ 23; and interfering with the Hamptons' contracts and business relationships with three government agencies, two private landowners, a conservation agency, two title companies, two real estate agents, a real estate company, and a bank, which led to the termination of each of these contracts and business relationships, ER 210-213 at ¶¶ 24-33; and by causing the U.S. Observer newspaper to publish defamatory articles about the Hamptons, ER 218-219 at ¶ 54, ER 118-120 (Castilleja/U.S. Observer Contract), *see also,* ER 125-132 (summarizing facts).

**Relevant Procedural History**

On March 15, 2012, the Hamptons filed this action against Steen, Trackwell, WCSO, and Wallowa County based on the facts set forth above. Doc. 1 (Complaint). This action was assigned to Magistrate Judge Patricia Sullivan. Doc. 2 (Notice of Assignment). At the time, a separate action arising out of substantially similar facts was pending in state court against Trackwell.[1] *Hampton v. Trackwell*, Wallowa County Circuit Court Case No. 09-09-13224 (the "State Action"). On

---

[1] The District Court took judicial notice of the complaint and amended complaint in Case No. 09-09-13224, which are part of the District Court's record in Case No. 2:10-cv-1233-SU. *See* Doc. 104 n.2 (Order Granting Stay).

July 13, 2012, Steen, WCSO, and Wallowa County moved to dismiss the Hamptons' Amended Complaint. Doc. 27 (Def's Mot. to Dismiss). The Hamptons responded and the District Court set the matter for oral argument on January 24, 2013. However, on October 24, 2012, Trackwell was convicted on two criminal charges of violating the stalking protective order which protected the Hamptons. ER 103, ER 250. On November 9, 2012, Trackwell was sentenced to two six month terms of imprisonment. ER 98-102. Trackwell requested a stay of this action based on his incarceration. ER 250-251. Trackwell also requested a stay of the State Action, which was denied. Doc. 96 at 2 (Pls' Resp. to Request for Stay). The District Court stayed this action because Trackwell was incarcerated and the "claims here may be impacted or simplified by a final resolution of the state case." Doc. 104 at 5. On August 8, 2013, the Hamptons filed their Second Amended Complaint, which added Castilleja as a defendant. Doc. 115.

Trackwell delayed the State Action by refusing to provide discovery or submit to a deposition. Doc. 124 at 3 (Pls' Mem. in Sup. of Motion to Vacate Stay). On the eve of a decision regarding Trackwell's contempt of court for refusing to submit to a deposition, he successfully moved to recuse the state court judge. Doc. 125, Ex. 2 at 1-2 (Decl. of D. Zachary Hostetter). By January 2014, this action was still stayed, and the Hamptons moved to vacate the stay based on

17

federal law regarding the stay of parallel proceedings and Trackwell's dilatory tactics in the State Action. Doc. 124 at 1 (Pls' Mem. in Sup. of Motion to Vacate)

Trackwell thereafter stipulated that the Hamptons could amend their complaint in this action to add the claims alleged in the State Action, which effectively consolidated the two actions. ER 245-249. The Hamptons then obtained leave to file a Third Amended Complaint in order to add the claims from the State Action to this action. Doc. 144 (Order Granting Leave to Amend). The District Court then granted the Hamptons' motion to vacate the stay. Doc. 149 (Order Vacating Stay).

On April 15, 2014, the Hamptons filed their Third Amended Complaint, which alleged five claims against all Appellees under 42 U.S.C. § 1983 and two claims against all Appellees for violations of 18 U.S.C. §§1961-1968 (RICO). ER 228-232; ER 239-240. The Hamptons also alleged one claim against Trackwell for his many violations of 15 U.S.C.A. §§ 1692-1692p (FDCPA). ER 243. Appellants also alleged numerous state-law claims against all Appellees. ER 232-242.

Steen, Castilleja, WCSO, and Wallowa County moved to dismiss the Hamptons' claims against them. Doc. 157 (Defs' Motion to Dismiss). Trackwell moved to strike certain of the Hamptons' allegations pursuant to Fed. R. Civ. P. 12. Doc. 159 (Motion to Strike); Doc. 161 (Amended Motion to Strike). The District

Court set oral argument for the motion to dismiss filed by Steen, Castilleja, WCSO, and Wallowa County for July 16, 2014. Doc. 171 (Schd. Order). The District Court denied Trackwell's motion and amended motion to strike and ordered him to file an answer. Doc. 187. Trackwell did not file his answer as ordered and instead sought recusal of Magistrate Judge Sullivan.

On July 1, 2014, Magistrate Judge Sullivan held a status conference to address Trackwell's demand for recusal. Doc. 197 (Schd. Order). After receiving responses from the parties, Magistrate Judge Sullivan reassigned this action to Chief Judge Ann Aiken. Doc. 201. Trackwell moved for an extension of time to file his answer. Doc. 200 (Motion for Extension). The District Court denied Trackwell's request for an extension and ordered him to file his answer. Doc. 204 (Order Denying Extension). Rather than filing an answer, Trackwell filed three more motions under Fed. R. Civ. P. 12. Doc. 206 (Amended Motion to Strike), Doc. 211 (Motion to Dismiss), Doc. 215 (Amended Motion to Dismiss).

Steen, Castilleja, WCSO and Wallowa County also moved to quash Appellants' subpoenas for Steen's phone number, Castilleja's three phone numbers, and WCSO's Undersheriff Steve Rogers' phone number. ER 154-160, ER 240-242.

On October 28, 2014, the District Court granted Appellees' three motions to dismiss, quashed Hamptons' subpoenas, and entered judgment dismissing Hamptons' Third Amended Complaint. ER 1-38, Doc. 233. On October 30, 2014, the District Court entered a pre-filing order against Hamptons. ER 39-40.

## RULINGS PRESENTED FOR REVIEW

1. The District Court's opinion and order dismissing Appellants' lawsuit, and accompanying final judgment, entered on October 28, 2014. ER 1-38, Doc. 233.

2. The District Court's order quashing Appellants' subpoenas, entered on October 28, 2014. ER 16-18.

3. The District Court's pre-filing order entered on October 30, 2014. ER 39-40.

## SUMMARY OF THE ARGUMENT

The District Court erred by dismissing the Hamptons' first, third, fourth, and fifth 42 U.S.C. § 1983 claims because the Hamptons identified their protected property and liberty interests in contractual and business relationships, goodwill, and the occupation of property development and the government actions depriving them of these interests. The Hamptons also alleged that Appellees rendered them unable to pursue their occupation, which was caused by Appellees' government-directed actions that were arbitrary and lacking any rational basis, thus stating a prima facie substantive due process claim. The District Court erred by dismissing the Hamptons' second § 1983 claim because the Hamptons alleged that (1) they engaged in constitutionally protected activity; (2) as a result, the Hamptons were subjected to adverse action by Appellees that would chill a person of ordinary firmness from continuing to engage in the protecting activity; and (3) there is a substantial causal relationship between the Hamptons' protected activity and Appellees' adverse action.

The District Court erred by dismissing the Hamptons' 18 U.S.C. §§ 1962-1968 (RICO) claims because the Hamptons alleged that Appellees engaged in an illegal enterprise through a pattern of racketeering activity. The Hamptons identified the role each Appellee played in their illegal enterprise and alleged with particularity the time, place, and manner of Trackwell's acts of fraud. The

Hamptons' allegations state prima facie RICO claims and satisfy the requirements of Fed. R. Civ. P. 9(b).

The District Court erred by granting Trackwell's motions to dismiss, which should have been barred as successive under Rule 12(g)(2). The District Court erred by *sua sponte* dismissing the Hamptons' 15 U.S.C. §§ 1692-1692p (FDCPA) claim on Rule 12(b)(6) grounds not raised by Trackwell, without providing notice and an opportunity for the Hamptons to submit argument demonstrating why this was an improper ground for dismissal. Moreover, the Hamptons' FDCPA claim satisfies the pleadings standards of Rules 8(a) and 12(b)(6). The District Court also erred by raising *sua sponte* the statute of limitations defense after Trackwell stipulated that he would not assert this defense.

The District Court abused its discretion by quashing the Hamptons' subpoenas for certain cell phone records on the grounds that the Hamptons' subpoenas were similar to Trackwell's nine subpoenas to various nonparties that the District Court had previously quashed. The District Court also erred by holding that the Hamptons' subpoenas were unduly burdensome without requiring Appellees to demonstrate or provide any proof that the subpoenas were in fact unduly burdensome.

Finally, the District Court abused its discretion by entering a pre-filing order against the Hamptons without compiling an adequate record for review, without

making any substantive findings about the alleged frivolous or harassing nature of the Hamptons' litigation, without narrowly tailoring the pre-filing order, and without providing the Hamptons prior notice or an opportunity to be heard.

**STANDARD OF REVIEW**

This Court reviews a dismissal under Rule 12(b)(6) de novo. *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir. 1997). "We limit our review to the allegations of material facts set forth in the complaint, which we read in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, we take to be true." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**ARGUMENT**

**A.    The Hamptons' detailed factual and legal allegations amply satisfy the pleading requirements for each of the Hamptons' claims.**

The District Court erred in holding that the Hamptons' Third Amended Complaint failed to state a claim upon which relief could be granted. The Hamptons pleaded amply sufficient factual and legal allegations that support all of their claims. The Hamptons' factual allegations describe numerous specific actions of Appellees that support each of the Hamptons' claims. The United States Supreme Court has explained that, in order to survive a motion to dismiss,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)). Fed. R. Civ. P. 8(a) only requires "'a short and plain statement of the claim …' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. A complaint "does not need detailed factual allegations." *Id*. *Iqbal* elucidated two working principles that underlie *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a

complaint that states a plausible claim for relief survives a motion to dismiss.

*Id.* at 678-79. These two principles should be applied as follows:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Id.* at 679 (emphasis added).

The Hamptons' pleadings satisfy the requirements of Fed. R. Civ. P. 12(b)(6) and 8(a). The Hamptons alleged "well-pleaded factual allegations" that, when their veracity is assumed, "plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. The Hamptons satisfied their burden to plead "factual content that allows the court to draw the reasonable inference that [Appellees are] liable for the misconduct alleged." *See id.* at 678. Given the Hamptons' well-pleaded allegations and the well-developed record below, none of the Appellants could possibly be mistaken as to what the Hamptons' "claim[s] are and the grounds upon which [those claims] rest[].'" *Twombly*, 550 U.S. at 555.

The District Court erred by dismissing each of the Hamptons' claims.

**B.    The Hamptons properly pleaded their 42 U.S.C. § 1983 claims.**

**1.    The Hamptons properly pleaded the factual allegations and legal bases supporting their First § 1983 Claim – deprivation of protected property and liberty interests.**

**a. The Hamptons pleaded specific factual allegations supporting their First § 1983 Claim.**

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The District Court held that the Hamptons simply made conclusory legal allegations unsupported by sufficient factual allegations. ER 24. However, the legal allegations in the Hamptons' First § 1983 Claim are well-supported by numerous specific factual allegations.

To avoid needless repetition of factual allegations throughout the Third Amended Complaint, the Hamptons set forth all of their detailed factual allegations in an early section of the Third Amended Complaint, and then incorporated those detailed factual allegations by reference into their subsequent allegations setting forth specific causes of action. The Federal Rules of Civil Procedure permit this streamlined organization of a complaint: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c).  Thus, the Hamptons' First § 1983 Claim – and all their claims – rest upon specific factual allegations set forth towards the beginning of the Third Amended Complaint.

Among the Hamptons' factual allegations are numerous allegations relating to their First § 1983 Claim. The Hamptons alleged that Appellees had interfered with the Hamptons' existing contractual and business relationships with the United States Department of Agriculture ("USDA"), the United States Natural Resource Conservation Service ("NRCS"), and the Oregon Watershed Enhancement Board ("OWEB"), which resulted in the termination of these existing contractual and business relationships. ER 210 ¶ 24. The Hamptons alleged that Appellees had interfered with the Hamptons' contractual relationship with Junior Lewis and Rose Lewis ("the Lewises"), from whom the Hamptons had purchased a portion of "The Pocket Ranch" and to whom the Hamptons were making payments under their purchase agreement, which resulted in the Lewises terminating their contractual relationship and suing the Hamptons to foreclose the security interest in The Pocket Ranch. *Id. ¶* 25. The Hamptons alleged that Appellees had interfered with the Hamptons' existing contractual and business relationships with The Nature Conservancy, with which the Hamptons entered into a purchase and sale agreement for "The Pocket Ranch" and/or the purchase and sale of a conservation easement on the ranch, which resulted in The Nature Conservancy terminating its contractual relationship with the Hamptons. ER 211 ¶ 26. The Hamptons alleged that Appellees had interfered with the Hamptons' business relationships with Marilyn Suarez and Wallowa Title Company. ER 211-212 ¶ 29. The Hamptons

29

alleged that Appellees had interfered with the Hamptons' existing business relationship with First American Title Company. ER 212 ¶ 30. The Hamptons alleged that Appellees had interfered with the Hamptons' existing business relationship with Russ Ruonavaara and the General Land Office, which resulted in Ruonavaara terminating his relationship with the Hamptons. *Id.* ¶ 31. The Hamptons alleged that Appellees had interfered with the Hamptons' business relationship with Bill Bushlen and the General Land Office. ER 212-213 ¶ 32. Finally, the Hamptons alleged that Appellees had interfered with the Hamptons' business relationship with Community Bank. ER 213 ¶ 33.

"When there are well-pleaded factual allegations, a court should assume their veracity." *Iqbal*, 556 U.S. at 679. The Hamptons' allegations regarding Appellees' interference with numerous specifically identified contractual and business relationships are well-pleaded. For purposes of Rule 12(b)(6), the Court must assume these allegations to be true. *See id.* Assuming the truth of these allegations, the Court must "then determine whether [the Hamptons' allegations] plausibly give rise to an entitlement to relief." *Id*.

### b. The Hamptons properly pleaded the deprivation of constitutionally protected property and liberty interests.

The two elements of a § 1983 claim are "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v.*

*County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). The District Court held that "the Hamptons fail to allege the deprivation of a property or liberty interest necessary to state a claim for denial of their substantive or procedural due process rights." ER 25. This holding was erroneous because this Court has previously recognized the property and liberty interests alleged by the Hamptons.

### i. The Hamptons' contractual relationships are protected property interests.

This Court has expressly recognized "that deprivation of contractual rights may create a claim under section 1983." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987) (noting that "written contracts, as clear evidence of a formal understanding supporting a claim of entitlement, can create protected property interests"). The Supreme Court has explained that:

> "'property' denotes a broad range of interests that are secured by existing rules or understandings. A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (some internal quotation marks omitted).

The Hamptons alleged they had actual, existing contractual relationships with the USDA, NRCS, OWEB, the Lewises, and The Nature Conservancy. ER 210-211. The Hamptons alleged that Trackwell interfered with each of these

31

existing contracts in furtherance of Appellees' schemes, which caused the USDA, NRCS, OWEB, the Lewises, and The Nature Conservancy to terminate their contracts with the Hamptons. ER 210-211, ER 228. Under *Perry*, the Hamptons' interests in each of these existing contracts constitute "property" interests for due process purposes because, as is inherent in the very nature of a contract, there are "rules [and] mutually explicit understandings" that support the Hamptons' claims of entitlement to the benefits of these contracts and that the Hamptons "may invoke at a hearing." *Perry*, 408 U.S. at 601.

The District Court erred when it held that the Hamptons' First § 1983 Claim merely pleaded a "conclusory allegation" regarding "unilateral expectations." ER 24. To the contrary, the Hamptons identified multiple "actual … contractual relationships" with specific parties. ER 210-211, ER 228. Actual contracts with third parties are much more than a unilateral expectation. Because the Hamptons pleaded that Appellees had interfered with specific, existing contracts between the Hamptons and specifically identified third parties, the Hamptons sufficiently pleaded a violation of a protected property interest for purposes of stating a claim under § 1983.

> ### ii. The Hamptons' business goodwill is a protected property interest.

This Court has previously recognized that "[t]he goodwill of one's business is a property interest entitled to protection; the owner cannot be deprived of it

32

without due process." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). *Accord Lantz v. Crate*, 268 F. App'x 548, 550 (9th Cir. 2008) (noting that an interest in the goodwill of a business is a constitutionally protected property interest of which a party may not be deprived without due process of law). Goodwill is defined as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business." *Black's Law Dictionary* 715 (8th ed. 2004) (citation omitted). Patronage, in turn, is defined as "[a]ll the customers of a business; clientele." *Id.* at 1164. Ultimately, goodwill "is only another name for reputation, credit, honesty, fair name, reliability." *Id.* at 715.

Federal courts look to "state law to define the dimensions of protected property interests." *Gasco*, 874 F.2d at 1316. Oregon law explicitly recognizes goodwill as a property interest. *See* ORS 65.534(1) (providing that a "corporation may sell, lease, [or] exchange . . . all of its property, with or without the goodwill"); ORS 65.484(1)(d)(A) (referencing the fair market value of "net tangible and intangible assets, including goodwill," of a public benefit or religious corporation"); ORS 307.020(1)(a)(D) (including "goodwill" in the definition of "Intangible personal property").

The Hamptons alleged that Appellees intentionally deprived the Hamptons of their good business reputation and patronage, that is, their goodwill. Specifically, the Hamptons identified damage to their reputation and patronage

with numerous business associates, including a real estate agency, two banks, two title companies, a conservation agency, and three government agencies. *See* ER 210-213 ¶¶ 24-33, ER 229 ¶ 113 (describing Appellees' interference with the Hamptons' contractual and business relationships through defamation and other means). Because the Hamptons pleaded that Appellees deprived the Hamptons of their goodwill with specific businesses and individuals with whom the Hamptons did business, the Hamptons sufficiently pleaded a violation of a protected property interest for purposes of stating a claim under § 1983.

### iii. The Hamptons' right to engage in the occupation of property development is a protected liberty interest.

The liberty guaranteed by the Fourteenth Amendment "denotes . . . the right of the individual to contract, [and] to engage in any of the common occupations of life." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). Indeed, "the right to work for a living in the common occupations of the community is *the very essence of the personal freedom and opportunity* that . . . the [Fourteenth] Amendment" secures. *Truax v. Raich*, 239 U.S. 33, 41 (1915) (emphasis added).

The District Court erred when it stated that the Third Amended Complaint "is void of any information as to the occupation or profession of [the Hamptons]." ER 25. The Third Amended Complaint includes multiple allegations demonstrating the Hamptons' occupation. The Hamptons alleged that they acquired a portion of

"The Pocket Ranch" from the Lewises. ER 210. As a result of Appellees' interference, the Lewises terminated that contract and sued to foreclose their security interest in the ranch. *Id.* The Hamptons alleged that they had entered into a purchase and sale agreement of "The Pocket Ranch" to The Nature Conservancy and/or the purchase and sale of a conservation easement. ER 211. The Hamptons further alleged that they had established contracts and business relationships with the USDA, NRCS, and OWEB. ER 210.

The District Court should have read these allegations "in the light most favorable" to the Hamptons and allowed the benefit of "all reasonable inferences therefrom." *Pareto*, 139 F.3d at 699. If the District Court had done so, it would have had no basis to hold that the Third Amended Complaint "is void of any information" regarding the Hamptons' occupation, because these types of contractual relationships are common to the profession of property development. Property developers routinely purchase ranch properties, as the Hamptons did from the Lewises. Property developers routinely sell ranch properties and negotiate for conservation easements on those ranches, as the Hamptons did with The Nature Conservancy. Property developers routinely enter into contractual and business relationships with the USDA, NRCS, and OWEB. Because the Hamptons' allegations demonstrate that they "engag[ed] in [property development, one] of the common occupations of life." *Roth*, 408 U.S. at 572, the Hamptons sufficiently

pleaded the violation of their liberty interest in this occupation for purposes of stating a claim under § 1983.

> ### c. The Hamptons' right to engage in property development without arbitrary government interference is a protected due process right.

The District Court erred in dismissing this claim on the ground that the Hamptons did not allege that they were "completely prohibited from pursuing their occupation." ER 25. The District Court cited *Dittman v. California,* 191 F.3d 1020, 1029 (9th Cir. 1999), in support of its reasoning. *Dittman*, however, does not support the District Court's holding. *Dittman* involved certain disclosure requirements in California for licensed acupuncturists. 191 F.3d at 1024. This Court observed that the requirement that an acupuncturist applicant disclose his social security number, "like minimal education and testing requirements . . . operates as a complete barrier to entry into the profession of acupuncture." *Id.* at 1029-30. Nevertheless, this Court upheld these disclosure requirements, holding that California "need not issue to [Dittman] an acupuncture license unless he first discloses his social security number." *Id.* at 1032-33.

*Dittman* is inapposite to this case. This case does not involve the uniform imposition of basic threshold requirements for obtaining an occupational license. By stark contrast, this case involves Appellees' wrongful conduct specifically and personally directed at the Hamptons. *Dittman* does not support the District Court's

dismissal of the Hamptons' claim for a violation of their right to pursue their occupation.

The District Court's suggestion that the Hamptons alleged a mere "brief interruption" of their right to pursue their occupation is similarly erroneous. ER 24-25. Where a person's right to pursue his occupation is momentarily interrupted by proper legal processes, there is no violation of the person's right to pursue his occupation. *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (holding there was no violation of an attorney's right to practice his profession where a search warrant of the attorney's person was executed while his client was testifying before a grand jury). Here, the Hamptons alleged that Appellees systematically and comprehensively interfered with the Hamptons' occupation, contracts, business relationships, and church and family relationships and for an ongoing period of several years. ER 210-211 ¶ 25 ("after July 1, 2009"); ER 211-212 ¶ 29 ("after July 1, 2009, and to the present"); ER 212 ¶ 31 ("after July 1, 2009, and to the present"); ER 212-213 ¶ 32 ("in 2011 and to the present").

Under § 1983, a plaintiff's "allegations regarding the invasion of her business affairs and disruption of financial transactions without notice, is sufficient to establish a procedural due process violation." *Lebbos v. Judges of Superior Court, Santa Clara Cnty.,* 883 F.2d 810, 818 (9th Cir. 1989) (holding that allegations regarding defendants' three-year long effort to collect a debt by

improperly invading Lebbos's business affairs and seizing real property owned in trust by Lebbos's daughter stated a due process claim). In addition, "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007), *aff'd sub nom.*, 553 U.S. 591 (2008).

Appellees' invasions of the Hamptons' business relationships, disruptions of their financial transactions, sabotage of their contracts, vexatious lawsuits, interference with their occupation, illegal "debt" collection efforts, stalking, and harassment have occurred over a span of five years. During this time, Appellees publicized defamatory reports to the Hamptons' business associates, friends, and church members; sabotaged the Hamptons' contracts with three government agencies, the Lewises, and The Nature Conservancy; made repeated false reports about the Hamptons to numerous law enforcement agencies, and destroyed the Hamptons' business relationships with a bank, two title companies, a real estate company, and two realtors. These actions by Appellees are arbitrary and lack any rational basis. *See Engquist*, 478 F.3d at 997. Because the Hamptons alleged that Appellees have specially targeted the Hamptons and have systematically prevented them from pursuing their occupational activities since 2009, the Hamptons

sufficiently pleaded the violation of their due process rights for purposes of stating

a claim under § 1983.[2] *See Lebbos*, 883 F.2d at 818.

> **2. The Hamptons properly pleaded the factual allegations and legal bases supporting their Second § 1983 Claim – retaliation for petitioning for redress of grievances.**

"Deliberate retaliation by state actors against an individual's exercise of the right to petition is actionable under 42 U.S.C. section 1983." *Jefferson v. Tuteur*, 261 F. App'x 10, 11 (9th Cir. 2007) (unpublished decision) (*citing Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). As this Court has explained:

> The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances. Deliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy").

*Soranno*, 874 F.2d at 1314 (some citations omitted).

---

[2] This Court has noted that the liberty interest to pursue an occupation has not yet been given clear and definite boundaries. *See Engquist*, 478 F.3d at 997 ("The Supreme Court has not specified the boundaries of the right to pursue a profession, but has identified it generally."); *Dittman*, 191 F.3d at 1029 ("[T]he precise contours of that liberty interest remain largely undefined . . . ."). Given the undefined boundaries of this liberty interest, the Hamptons should be permitted, at a minimum, to litigate this claim that they have properly pleaded. This Court should reinstate this claim, to permit the Hamptons the opportunity to develop a detailed factual record upon which a more informed legal decision might then be made as to whether the facts as developed support a claim for a violation of the Hamptons' right to pursue their occupation.

To state a claim for retaliation under § 1983, a plaintiff must allege that: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The Hamptons alleged each of these elements. First, the Hamptons alleged that they engaged in the constitutionally protected activity of accessing the courts to petition for redress of grievances. ER 229 ¶ 107. The Hamptons referenced several civil proceedings to which they were a party, including *American Bank of Missouri, et al. v. John Doe, et al.,* Wallowa County Circuit Court Case No. 08-01-12961, ER 207 ¶ 15(a); *Trackwell v. Hampton*, United States District Court Case No. 3:11-CV463MO; ER 214 ¶ 39; *Trackwell v. Hostetter*, United States District Court Case No. 3:11-CV-00627-MO, ER 214-215 ¶ 40; and *Hampton v. Trackwell*, Wallowa County Circuit Court Case No. 10-08-13395 (civil stalking), ER 219 ¶ 56.

Second, the Hamptons that Appellees took specific adverse actions in retaliation: perjury, ER 219-223 ¶¶ 58, 60, 66, 72, 74, 76; witness tampering, ER 219-220 ¶¶ 58-59, ER 224-225 ¶¶ 56, 62, 84; obstruction of judicial administration, ER 220 ¶ 63; obstruction of justice, ER 225-225 ¶¶ 86, 88, 90; and

40

false representation regarding legal summons, ER 224-225 ¶¶ 84-85.[3] This litany of adverse actions would certainly be expected to chill a person of ordinary firmness from continuing to engage in the protected activities of accessing the courts to petition for redress of grievances.

Third, the "substantial causal relationship" between the Hamptons' protected activity and Appellees' retaliatory actions is plainly evident on the face of the Third Amended Complaint. Appellees' adverse actions against the Hamptons were specifically aimed at the judicial process and the courts, including the very proceedings in which the Hamptons were attempting to exercise their protected right of access to the courts to petition for redress of grievances.

Thus, the District Court erred in holding that the Hamptons' pleadings did not state a claim for retaliation under § 1983.

### 3. The Hamptons properly pleaded the factual allegations and legal bases supporting their Third § 1983 Claim – "defamation-plus."

There are two ways to state a § 1983 "defamation-plus" claim: "(1) allege that the injury to reputation was inflicted in connection with a federally protected

---

[3] The District Court found fault with the Hamptons' pleadings because "Claim 2 merely incorporates paragraphs 1 through 105 of the TAC." Doc. 232 at 26 n.20. As explained *supra* at 28, § VIII(B)(1)(a), Rule 10 expressly permits incorporation by reference in a pleading: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). The Rules do not require Hamptons to needlessly repeat every relevant factual allegation in each of their multiple related causes of action.

right; or (2) allege that the injury to reputation caused the denial of a federally protected right." *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

Here, the Hamptons specifically alleged that Appellees repeatedly inflicted injuries to their reputations in connection with federally protected rights, property interests, and liberty interests. *See* ER 210-213 ¶¶ 24-33 (numerous false, defamatory allegations); ER 206 ¶ 13 (false reports to numerous law enforcement agencies); ER 230-231 ("defamation-plus" claim under § 1983, incorporating prior defamation related allegations); *see also* ER 235-236 (defamation claims and damages). As discussed *supra* at 30-36, § VIII(B)(1)(b)(i)-(iii), the Hamptons specifically identified their federally protected rights and interests, that is, their rights to access the courts and to petition for redress of grievances, and their protected interests in their contractual and business relationships, goodwill, and the occupation of property development.

After incorporating the prior factual allegations, the Hamptons' Third § 1983 Claim alleged that Appellees' "conduct as set forth above was defamatory. It was committed with the purpose and had the effect of, causing the persons and/or entities described above to terminate their existing and/or prospective business and/or contractual relationships with [the Hamptons]." ER 229. This legal conclusion is supported by well-pleaded allegations regarding Appellees' injuries

to the Hamptons' reputations. The District Court erred in holding that the Hamptons' pleadings did not state a "defamation-plus" claim under § 1983.

**4. The Hamptons properly pleaded the factual allegations and legal bases supporting their Fourth § 1983 Claim – substantive due process.**

The District Court dismissed the Hamptons' Fourth § 1983 Claim on the ground that it was indistinguishable from the Hamptons' First § 1983 Claim. Because the Hamptons sufficiently pleaded their First § 1983 Claim, *see supra* at 28-36, § VIII(B)(1)(a)-(b), the District Court erred in dismissing the Fourth § 1983 Claim on this basis. Moreover, the Hamptons Fourth § 1983 Claim sufficiently pleaded a substantive due process claim.

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). "As a threshold matter, to establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property." *Id.* (internal quotation marks omitted). The Due Process Clause prevents government officials and agents "from abusing [their] power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992). "Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988).

In their Fourth § 1983 Claim, the Hamptons alleged that Appellees' arbitrary law enforcement activities deprived the Hamptons of their liberty and property interests without due process of law. ER 230 ¶ 119. The Hamptons alleged that Appellees abused their power in numerous specific instances. *See, e.g.*, ER 203-204 ¶ 6 (Appellees' stalking, harassment, defamation, extortion, coercion of, and retaliation against the Hamptons); ER 205-206 ¶¶ 12-13 (Appellees' false reports to six government agencies); ER 206-209 ¶ 15 (Trackwell's numerous violations of debt collection laws and the assistance of co-Appellees therein); ER 210-213 ¶¶ 24-33 (Trackwell's interference with the Hamptons' contracts, business relationships, and goodwill, and the assistance of co-Appellees therein); ER 214-215 ¶¶ 38-40 (Trackwell's and Steen's groundless lawsuits against the Hamptons); ER 220 ¶¶ 60-63 (Trackwell's perjury, and Trackwell and Steen's witness tampering and obstruction of judicial administration); ER 222 ¶ 70 (Steen's official misconduct). As explained *supra* at 30-36, § VIII(B)(1)(b), the Hamptons also alleged that Appellees' government actions have arbitrarily deprived them of specific protected liberty and property interests. The District Court erred in dismissing the Hamptons' Fourth § 1983 Claim, which sufficiently pleaded a substantive due process claim.

**5. The Hamptons properly pleaded the factual allegations and legal bases for their Fifth § 1983 Claim – retaliation by wrongful initiation of civil proceedings.**

The District Court dismissed the Hamptons' Fifth § 1983 Claim, reasoning that the "ABM lawsuit, Trackwell lawsuit I, and Trackwell lawsuit II are all civil cases, and cannot support a claim for malicious prosecution." ER 29. The District Court noted that malicious prosecution "is a concept applicable only in criminal proceedings." *Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974). Apparently, the District Court viewed the Hamptons' Fifth § 1983 Claim as a claim for the tort of malicious prosecution. However, the Hamptons Fifth § 1983 Claim did not state a claim for the tort of malicious prosecution, but for the separate tort of wrongful initiation of civil proceedings.

The Hamptons did not allege that Appellees maliciously subjected them to criminal prosecution. Rather, the Hamptons specifically alleged that Appellees' conduct "constituted wrongful initiation and prosecution of civil proceedings." ER 231 ¶ 125. The tort of wrongful initiation of civil proceedings, unlike the tort of malicious prosecution, applies to non-criminal judicial proceedings. *See Perry v. Rein*, 168 P.3d 1163, 1170-71 (Or. 2007) (explaining the elements of wrongful

initiation of civil proceedings). These distinct torts are often confused, and the District Court appears to have done so.[4]

In their Fifth § 1983 Claim, the Hamptons pleaded that Appellees' wrongful initiation of civil proceedings against the Hamptons "was motivated by [Appellees'] desire to retaliate against [the Hamptons] for their exercise of rights guaranteed by the United States Constitution including, but not limited to, [their] right of access to the courts, their right to petition the government for redress of grievances." ER 231. As already noted in the discussion of the Hamptons' Second § 1983 Claim, *supra* at 39-41, § VIII(B)(2), "[d]eliberate retaliation by state actors against an individual's exercise of [the right to access the courts to petition for redress of grievances] is actionable under section 1983." *Soranno's*, 874 F.2d at 1314.[5]

---

[4] "On occasion, courts have used 'malicious prosecution' as shorthand for wrongful initiation of civil process. The two are, of course, distinct terms, with the former pertaining to the initiation or procurement of criminal proceedings." *Mantia v. Hanson*, 79 P.3d 404, 408 n.6 (Or. Ct. App. 2003). "Wrongful initiation of a civil proceeding is the civil counterpart of a malicious prosecution action." *Lee v. Mitchell*, 953 P.2d 414, 427 (Or. Ct. App. 1998).

[5] The Fifth Circuit and Tenth Circuit Courts of Appeals have recognized that the abuse of legal procedure is actionable under § 1983. *See Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978) ("litigiousness which gives rise to a common law tort action for misuse of legal procedure may be so egregious as to constitute a violation of Section 1983 as well, if the tort-feasor, under color of state law, subjects the tort-victim to a deprivation of Constitutional dimension"); and *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151,

The Hamptons stated a § 1983 violation by pleading that Appellees had wrongfully initiated civil proceedings against the Hamptons in retaliation for the Hamptons' exercise of their right to access the courts to petition for redress of grievances. Thus, the District Court erred in dismissing the Hamptons' Fifth § 1983 Claim.

**C.    The Hamptons properly pleaded their claims for violations of 18 U.S.C. §§ 1962-1968 (RICO).**

The District Court dismissed the Hamptons' substantive RICO claim and their RICO conspiracy claim on the ground that the Hamptons failed to state a substantive RICO claim. ER 30-35. This holding was erroneous because the Hamptons properly pleaded their RICO claims. To state a claim under 18 U.S.C. §§ 1962-1968, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007). The Hamptons specifically alleged each of these elements.

The Hamptons' RICO claims satisfy the requirements of Rule 12(b)(6). The Hamptons alleged "well-pleaded factual allegations" that, when their veracity is assumed, "plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. The Hamptons satisfied their burden to plead "factual content that allows the court to draw the reasonable inference that [Appellees are] liable for the

1155 n.5 (10th Cir. 2001). "As with claims for malicious prosecution, state law provides the elements for a claim of abuse of process under § 1983."

misconduct alleged." *See id.* at 678. The District Court erred by dismissing the

Hamptons' RICO claims.

> **1. The Hamptons alleged conduct showing the existence of a RICO enterprise among Appellees (elements 1 and 2 of a RICO claim).**

"[A]n associated-in-fact enterprise is a group of persons associated together

for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552

(internal quotation marks omitted). "To establish the existence of such an

enterprise, a plaintiff must provide both evidence of an ongoing organization,

formal or informal, and evidence that the various associates function as a

continuing unit." *Id.* (internal quotation marks omitted).

The Hamptons provided these factual allegations about Appellees'

enterprise:

> In 2007, Trackwell, Steen, WCSO, Judith Trackwell, Wickenkamp, and Lloyd Trackwell, Sr. . . . associated together for the purpose of . . . (d) discrediting, defaming, coercing, and injuring [the Hamptons], the family members of all, and others; (e) causing economic injury to [the Hamptons] and others in order to cause victims of the associated persons to pay money they do not owe, and/or to cause victims of the associated persons to abandon attempts to collect money that the associated persons, or one of them, owed to their victims; and (f) as set out more specifically in paragraph 6 above.

ER 205 ¶ 11. The Hamptons further alleged that:

> Defendants Wallowa County and WCSO, its elected officials named herein, its agents (including Trackwell), and other persons named herein, determined to harass, defame, discredit, coerce, extort, stalk, humiliate, and injure [the Hamptons], and to wrongfully interfere with

and deprive [the Hamptons] of their business and contractual relations through deception and fraud.

ER 203-204 ¶ 6. The Hamptons also alleged that: "[t]he associated persons conspired to collect the debt through unlawful debt collection practices, defamation, harassment, stalking, humiliation, coercion and extortion. The associated persons developed their conspiracy and plan against [the Hamptons] in 2007." ER 206 ¶ 14. The Hamptons detailed Trackwell's actions taken in furtherance of Appellees' enterprise. ER 206-213 ¶¶ 15-34. The Hamptons detailed the actions of Steen, WCSO, Wallowa County, and Castilleja in assistance of and in furtherance of Appellees' enterprise. ER 208-210 ¶¶ 17, 19, 22-23.

All of these specific, well-pleaded factual allegations are amply sufficient to state a claim that Appellees are "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552. Furthermore, the Hamptons alleged the following facts demonstrating an "ongoing organization" among Appellees: Trackwell becoming an agent and informant for WCSO and Steen, ER 213 ¶ 34; Trackwell attempting to collect the alleged debt from September 1, 2008 through the present using various means, ER 206-208 ¶ 15; Trackwell acting in concert with Steen and others over the phone, ER 209-210 ¶¶ 22-23; Trackwell conducting investigations as an agent and informant for WCSO, ER 211-213 ¶¶ 27-33; Trackwell and Steen initiating litigation against the Hamptons, ER 214-215 ¶¶ 38-40; and Trackwell, Castilleja, and Steen meeting

regularly to coordinate plans at the Wallowa County Sheriff's Office, ER 215 ¶ 41. The Hamptons provided well-pleaded allegations regarding Appellees' common purpose, ongoing organization, continuing unit, and course of conduct, thus satisfying the pleading requirements for the first two elements of a RICO claim.

**2. The Hamptons alleged a pattern of racketeering activity by Appellees (elements 3 and 4 of a RICO claim).**

To establish a pattern of racketeering activity, a plaintiff must show "a relationship between the predicates" and "the threat of continuing activity." *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). "Related conduct embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (internal quotation marks omitted).

As described above, the Hamptons alleged numerous predicate acts. ER 223-225, ¶¶ 78-89. These predicate acts are related by (1) similar victims: the Hamptons, their family members, and business associates; (2) similar methods: including false representations, repeated wire fraud, obstruction of justice, and fraudulent acts; (3) similar purposes: Appellees' scheme to defraud the Hamptons and obtain money by extortion, coercion, and false pretenses, in furtherance of Appellees' enterprise, *see* ER 223-225; (4) similar participants: each of the named Appellees; and (5) similar motivations, including injuring the Hamptons by

depriving them of their contractual rights and retaliating against the Hamptons for their exercise of constitutional rights, ER 226 ¶¶ 93, 97.

In addition to showing the "distinguishing characteristics" demonstrating a common relationship among Appellees' predicate acts, the Hamptons' allegations also show "the threat of continuing activity" by Appellees. *See Howard*, 208 F.3d at 749. Specifically, the Hamptons alleged numerous criminal activities that had been going on for years and were continuing "to the present": Trackwell, Steen, and WCSO submitted false reports to various government agencies "from 2008 to the present," ER 206 ¶ 13; Trackwell attempted to collect the "debt" "between September 1, 2008 and the present," ER 206-207 ¶ 15; Steen, WCSO, and Wallowa County assisted Trackwell "[f]rom July 1, 2009 to the present," ER 208 ¶ 17; Castilleja conspired with the other Appellees "from 2011 to the present," ER 208 ¶ 19.

The Hamptons' well-pleaded allegations regarding the Appellees' pattern of racketeering activity satisfied the pleading requirements for the third and fourth elements of a RICO claim.

### 3. The Hamptons satisfied the Rule 9(b) particularity requirements.

The District Court held that the Hamptons failed to meet the particularity requirement of Federal Rule of Civil Procedure 9(b) because they did not identify

individual fraudulent actions committed by Steen, Castilleja, WCSO, or Wallowa County. ER 34. This Court has explained that:

> there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant. . . . In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (alterations in original) (internal quotation marks omitted).

The Hamptons identified each Appellee's role in the Appellees' fraudulent schemes. *See* ER 208-209 ¶¶ 17, 19 (identifying the roles of Steen, WCSO, Wallowa County, and Castilleja). The Hamptons specifically alleged how Steen, WCSO, and Wallowa County secured and used Trackwell's services as an agent and informer. ER 203 ¶ 3, ER 211-213 ¶¶ 29-34. The Hamptons also "detail[ed] with particularity the time, place, and manner of each act of fraud." *Timberline Nw., Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998); *see* ER 223-225.

The Hamptons' RICO claims satisfied the pleading requirements of Rule 9(b). The District Court erred by concluding otherwise.

**D.    The District Court erred by dismissing the Hamptons' claims when Rule 12(g)(2) barred Trackwell's successive Rule 12 motions**

Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was

available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) The Rule is mandatory: "a party … must not." *Id*. "Thus if *the defendant moves before answer* to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion." Fed. R. Civ. P. 12(g), advisory committee note to 1966 amendment (emphasis added).[6]

Trackwell filed five Rule 12 motions and never has filed his answer. *See,* Doc. 159 (Trackwell's Motion to Strike); Doc. 161 (Amended Motion to Strike); Doc. 206 (Amended Motion to Strike); Doc. 211 (Motion to Dismiss and to Strike) and Doc. 215 (Amended Motion to Dismiss and to Strike). The District Court denied Trackwell's first two Rule 12 motions, which omitted the defenses of lack of subject-matter jurisdiction and failure to state a claim. Doc. 187.[7] Trackwell, however, filed three more Rule 12 motions. Trackwell's third, fourth, and fifth Rule 12 motions raised several identical issues.[8] The District Court should not have allowed Trackwell to file his third, fourth, and fifth Rule 12 motions, which

---

[6] *See* Doc. 220 at 3 (Pls' Resp. to [Trackwell's] Motion to Amended Motion (sic) to Dismiss) (the Hamptons raised the Rule 12(g)(2) bar before the District Court granted Trackwell's Rule 12 motions).

[7] Trackwell's third Rule 12 motion was denied as moot. ER 38.

[8] *Compare* Doc. 206-1 at 4-7 and ER 59-61 ("Noerr-Pennington" Doctrine) and Doc. 206-1 at 7-9 and ER 61-62, 65 (alleged lack of causal relationship).

only resulted in delay and further encouragement of Trackwell's dilatory tactics. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (citation omitted) (noting the philosophy of Rule 12(g) is that "a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). The District Court erred by dismissing the Hamptons' claims based on Trackwell's fourth and fifth Rule 12 motions, which should have been denied pursuant to Rule 12(g)(2). ER 38.

E. **The District Court erred by dismissing the Hamptons' FDCPA claim** *sua sponte***.**

The District Court dismissed the Hamptons' FDCPA claim against Trackwell because "the Court finds the Hamptons have failed to plead sufficient facts to establish Trackwell is a 'debt collector' within the meaning of the FDCPA." ER 36. Trackwell, however, did not move to dismiss the Hamptons' FDCPA claim on the ground that the Hamptons' pleadings failed to establish that Trackwell is a 'debt collector' within the meaning of the FDCPA. *See* ER 45-75 (Trackwell's Brief in Support of Motion to Dismiss). Trackwell's motion to dismiss relied almost entirely on the Hamptons' alleged lack of standing under Rule 12(b)(1). *See id.* However, the District Court denied Trackwell's Rule 12(b)(1) motion to dismiss "based on lack of standing." ER 20.

As to the Hamptons' FDCPA claim, Trackwell argued that his conduct was outside the scope of the FDCPA: "Plaintiffs can state no claim for injury under the

FDCPA. The original event underlying the fraud litigation by Trackwell and ABM was commercial in nature and not the result of a consumer transaction, thus the putting it [sic] outside the scope of the Fair Debt Collection Practices Act." ER 62, 63-65. Trackwell did not argue that the District Court should dismiss the Hamptons' claims under Rule 12(b)(6) because he was not a debt collector within the meaning of the FDCPA. Trackwell's complete argument under Rule 12(b)(6) was as follows:

> **Plaintiffs Complaint Fails to State a Cause of Action, Requiring Dismissal Under Rule 12(b)(6).**
>
> In the interests of brevity Defendant incorporates the arguments set forth herein above in support of his contention that Plaintiffs Third Amended Complaint be dismissed.
>
> The complete lack of any causal connection whatsoever to any harm claimed is a problem for each of the causes of action alleged by the Plaintiffs. To state a sufficient cause of action there must be alleged a real injury or harm. There must further be a nexus or causal connection which shows how the injury causes the harm. The causal connection is lacking in each of Plaintiffs' causes of action. The law requires that there [sic] sufficient facts alleged showing how the injury caused the harm to the Plaintiff. Plaintiffs complaint is absolutely lacking in such facts.

*Id.* ER 65.

If Trackwell's Rule 12(b)(1) arguments about standing, which the District Court rejected, *see* ER 20, are incorporated into Trackwell's Rule 12(b)(6) argument, then Trackwell's only arguments that the Hamptons' FDCPA claim should be dismissed under Rule 12(b)(6) were that (a) Trackwell's debt collection

activities focused on an alleged commercial debt, not consumer debt, and (b) the Hamptons did not allege any real injury or harm. Trackwell never argued that the Hamptons failed to establish that Trackwell is a "debt collector" under the FDCPA. Thus, the District Court *sua sponte* dismissed the Hamptons' FDCPA claim for their alleged failure "to plead sufficient facts to establish Trackwell is a 'debt collector' within the meaning of the FDCPA." ER 36.

This Court has held that "[a] district court must, at a minimum, give a plaintiff the opportunity to submit a written memorandum before dismissing a cause of action *sua sponte*." *Karamanos v. Egger*, 882 F.2d 447, 452 n.2 (9th Cir. 1989). Further:

> Although a trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6), the court must give notice of its intention to dismiss and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion. Here, the district court gave plaintiffs no notice of its intention to dismiss the § 1983 claims against defendants . . . let alone an opportunity to be heard on the matter before doing so. Even if we assume adequate notice, we will uphold a *sua sponte* dismissal without leave to amend only where the plaintiff cannot possibly win relief. As discussed *infra*, that is not the case here.

*Lee v. City of Los Angeles*, 250 F.3d 668, 683 n.7 (9th Cir. 2001) (citations, internal quotation marks, and brackets omitted). Here, as in *Lee*, the District Court erred by dismissing the Hamptons' FDCPA claim *sua sponte* on grounds not argued or briefed by any party without providing prior notice and an opportunity

for the Hamptons to submit a written memorandum in opposition to dismissal on those grounds.[9]

**F.      The Hamptons properly pleaded their FDCPA claim against Trackwell.**

   **1.      The Hamptons' FDCPA claim satisfies the pleading requirements.**

The Hamptons' FDCPA Claim alleges that Trackwell violated the Fair Debt Collection Practices Act. ER 243 ¶¶ 202-205. This legal conclusion is supported by well-pleaded factual allegations that Trackwell violated the FDCPA numerous times with the assistance of Steen, Castilleja, Wallowa County, and WCSO. *See* ER 206-208 ¶ 15 (alleging that "Trackwell attempted to collect the alleged debt . . . by taking one or more" specified actions); ER 208 ¶ 17 (alleging that Steen, WCSO, and Wallowa County have conspired with and assisted in Trackwell's debt collections efforts"); ER 208-209 ¶ 19 (alleging that Castilleja has conspired with and assisted in Trackwell's debt collection efforts); ER 211-213 ¶¶ 27-33 (detailing Trackwell's repeated false accusations that the Hamptons failed to pay their debts).

The Court must assume the veracity of these well-pleaded allegations regarding Trackwell's fraudulent debt-collection scheme and allow the Hamptons

---

[9] If the District Court believed the Hamptons had indeed failed to comply with the Federal Rule's liberal pleading requirements as to their FDCPA Claim, the District Court should have given the Hamptons leave to re-plead this claim, rather than simultaneously dismissing this claim and entering final judgment. *See id.* at 57, § VIII(F).

the benefit of every reasonable inference therefrom. *See Iqbal*, 556 U.S. at 67879.

These allegations "plausibly give rise to an entitlement to relief" because they allow a factfinder "to draw the reasonable inference that [Trackwell is] liable for the misconduct alleged." *Id.* Under Rule 8(a), Trackwell has received "fair notice of what the claim is and the grounds upon which it rests [and] detailed factual allegations" are unnecessary. *Twombly*, 550 U.S. at 555. The Hamptons satisfied the pleading requirements for their FDCPA Claim against Trackwell.

### 2. The Hamptons' FDCPA Claim is not time-barred.

The District Court also stated that "much of the misconduct by Trackwell is likely barred by the statute of limitations." ER 37. The Hamptons raised their FDCPA claims against Trackwell in earlier state-court litigation, which they initiated on September 1, 2009. On March 21, 2014, Hamptons and Trackwell stipulated that Hamptons' state-court action would be consolidated in a single federal court action. ER 246. Trackwell also stipulated that he would not assert any statute of limitations defenses on the Hamptons' claims. ER 247.[10] The District

---

[10] The stipulation was as follows:

> Plaintiffs, however, intend that their claims originally asserted in the State Action will, when added by amendment to the Federal Action, relate back to September 1, 2009, the date of filing of Plaintiffs' original complaint in the State action; therefore as an express condition of Plaintiffs' agreement to amend its Federal Action to include the claims asserted in the State Action, Plaintiffs require that

Court erred by raising the statute of limitations *sua sponte* after Trackwell waived this defense.

**G.** **At a minimum, the District Court erred in dismissing the Hamptons' claims without giving the Hamptons leave to amend their pleadings.**

Even were this Court to conclude that the Hamptons' allegations are not sufficiently specific or detailed to state a claim for relief with respect to some or all of the Hamptons' claims, this Court should still reverse the District Court's judgment because the District Court failed to give the Hamptons the opportunity to amend their pleadings.

This Court recently reversed a district court that dismissed a complaint under Rule 12(b)(6) for insufficient factual allegations and entered judgment soon after dismissal without giving the plaintiffs the opportunity to amend their complaint. *Handy v. Lane Cnty.*, 585 F. App'x 570 (9th Cir. 2014) (unpublished mem. op.) ("While the district court did not specifically address whether amendment would be allowed, the district court entered judgment soon after dismissal, effectively

---

these State Action claims relate back to September 1, 2009 – the date of filing of Palintiffs' original complaint in the State Action. Trackwell stipulates and agrees to this relation back and will not assert any statute of limitations defenses that could not have been asserted in the State Action before Plaintiffs' amendment of the Federal Action to include the claims alleged in the State Action, and upon so doing, to abate the State Action.

ER 247 at ¶ 4.

precluding amendment."). The Court in *Handy* reasoned that "[i]n general, leave to amend should be freely granted" under Fed. R. Civ. P. 15(a)(2). *Id.* (citing *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("[T]his policy is to be applied with extreme liberality.")). Indeed, "'[a] simple denial of leave to amend without any explanation by the district court is subject to reversal.'" *Id.* (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

Here, as in *Handy*, the District Court dismissed the Hamptons' claims on the ground that the Hamptons' allegations were insufficient to state a claim under Rule 12(b)(6). The District Court dismissed the Hamptons' suit and entered judgment on the same day, effectively precluding the Hamptons from amending their pleadings.[11] This was reversible error. There is ample evidence in the well-developed record below indicating that if any of the Hamptons' claims requires amendment, the Hamptons will be able to amend their pleadings to meet whatever requirements the Court deems necessary, and such amendment will not be futile. *See Handy*, 585 F. App'x at 570.[12]

---

[11] The District Court issued a pre-filing order against the Hamptons only two days after dismissing the Hamptons' lawsuit, effectively preventing them from filing further pleadings without the District Court's prior approval.

[12] The fact that Hamptons have amended their pleadings three times does not mean that amendment would have been futile. The Hamptons' prior amendments

The District Court's dismissal and entry of judgment, without giving the Hamptons an opportunity to amend their pleadings, was "not an exercise of discretion; it [was] an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Eminence Capital*, 316 F.3d at 1052 (noting that "there exists a presumption under Rule 15(a) in favor of granting leave to amend"). Thus, should this Court conclude that the Hamptons' pleadings are deficient in any way, this Court should reverse the District Court's judgment and remand with instructions to permit the Hamptons to amend their pleadings to cure any deficiencies.

## H. The District Court abused its discretion in quashing the Hamptons' Subpoenas.

The District Court has discretion to quash a subpoena duces tecum "the results of which it finds 'unreasonable and oppressive.'" *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (quoting Fed. R. Civ. P. 45(b)). "The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). A district court abuses its discretion to quash a subpoena "when [its] decision is based on an erroneous conclusion of law or where the record contains no evidence on which [it] rationally could have based that decision." *Premium Serv. Corp.*, 511 F.2d at 229. Here, the District Court abused

---

were allowable under Fed. R. Civ. P. 15(a)(1)(A) and 15(a)(2), not because the District Court held that the Hamptons' pleadings were insufficient.

its discretion in quashing the Hamptons' subpoenas because it based its decision on erroneous legal reasoning and because the evidence in the record does not support its decision.

**1.    The District Court failed to provide proper legal or factual analysis for its decision to quash the Hamptons' subpoenas.**

Instead of providing any detailed factual or legal analysis, the District Court simply quashed the Hamptons' subpoenas for the same reasons that it had previously quashed nine subpoenas that Trackwell had served on various nonparties. ER 18. The Hamptons had moved to quash the subpoenas Trackwell had served on various nonparties, including, among others, D. Zachary Hostetter (the Hamptons' attorney), Mr. Hostetter's wife, sister, and brother-in-law, and two of Mr. Hostetter's clients. The District Court quashed Trackwell's subpoenas, reasoning that "[b]ased on the facially irrelevant and overly broad subpoenas Trackwell has served on nonparties, who are in no way connected to this litigation, it is clear Trackwell has abused the subpoena process in order to harass and annoy nonparties, primarily Mr. Hostetter, rather than to seek information relevant to this case." ER 199.

In its order quashing the Hamptons' subpoenas, the District Court erroneously equated the Hamptons' subpoenas with Trackwell's subpoenas, without providing any analysis supporting this unwarranted comparison. The District Court stated:

> Magistrate Judge Sullivan found all [of Trackwell's] nine subpoenas were facially irrelevant, unduly burdensome, and were served to harass and annoy nonparties, and not for the purpose of obtaining information relevant to this case. Magistrate Judge Sullivan also entered a discovery order prohibiting Trackwell from serving additional subpoenas in this case without Court approval. For the reasons listed above, the Court quashes the subpoenas served by [the Hamptons] on Frontier Communications and U.S. Cellular.

ER 17-18. In contrast to this conclusory rationale regarding the Hamptons' subpoenas, the District Court's previous order quashing Trackwell's subpoenas runs a full twenty pages and provides well-reasoned and thoroughly explained analysis for quashing Trackwell's subpoenas. *See* ER 181-200.

In addition to providing inadequate legal analysis for its decision, the District Court also failed to provide meaningful factual analysis. Indeed, the only evidence cited by the District Court in denying the Hamptons' subpoenas was the subpoenas themselves. *See* ER 18 (citing the exhibits to ER 165-174, ER 139-153, which exhibits were the Hamptons' subpoenas at issue).

Because the District Court failed to provide proper legal or factual analysis in support of its decision, the District Court abused its discretion in quashing the Hamptons' subpoenas. *See Premium Serv. Corp.*, 511 F.2d at 229.

**2.** **Appellees failed to carry their burden to show that the Hamptons' subpoenas were unreasonable and oppressive.**

It is Appellees' burden to demonstrate that the Hamptons' subpoenas are "unreasonable and oppressive." *See Goodman*, 369 F.2d at 169. Under Rule 45(c)(3)(A)(iv):

> [T]he burden to establish that a subpoena duces tecum imposes an undue burden is on the person who moves to have it quashed. That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (Quashing or Modifying a Subpoena) (3d ed. 1998). Appellees failed to show "the manner and extent of the burden" the Hamptons' subpoenas allegedly imposed. In fact, as presented to the District Court and as explained below, the record contains detailed, material evidence to the contrary. *See* ER 121-134, (Pls' Response to [Defendants'] Motion to Quash Subpoenas); ER 76-82, (Declaration of D. Zachary Hostetter in Support of Pls' Response to [Defendants'] Motion to Quash Subpoenas).

**a.** **The Hamptons' subpoenas are reasonably calculated to lead to the discovery of admissible evidence.**

Appellees argued that the Hamptons' subpoenas should be quashed "because the subpoenas are not reasonably calculated to lead to the discovery of admissible evidence." ER 176, ER 156. Other than these mere assertions, Appellees did "not

contend that the records requested are not relevant to the matters at issue in this action." ER 123. Under Federal Rule of Civil Procedure 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "'Relevance' on discovery has a very broad meaning." *Heathman v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974).

Even though Appellees had the burden to demonstrate the subpoenas should be quashed, the Hamptons provided evidence showing that the subpoenas are reasonably calculated to lead to the discovery of admissible evidence. ER 123-132 (showing relevance of the subpoenaed phone records). In addition, the relevance of the information sought is apparent on the face of the Hamptons' pleadings. *See generally* ER 204-227. The phone records of the dates, times, and duration of telephone calls among Appellees, their agents, and associated persons are reasonably calculated to lead to the discovery of information about the substance of Appellees' communications. It is reasonable to predict that the phone records sought include communications related to Appellees' illegal schemes and tortious activities. The phone records sought will enable the Hamptons to discover that

such communications actually took place, which is the first step for learning the substance of the communications.

The Hamptons' subpoenas of the phone records of Appellees Steen and Castilleja, and of Undersheriff Steve Rogers, who is employed by Appellee WCSO and acted under Steen's supervision at all material times, are reasonably calculated to lead to the discovery of admissible evidence. *See* ER 123-132 (showing relevance of the subpoenaed phone records).

### b. The Hamptons' subpoenas are not overbroad.

Appellees also argued that the Hamptons' subpoenas should be quashed because "they are overbroad because they have no time or content restrictions." ER 178, ER 157. Other than these conclusory assertions, Appellees did not explain how the Hamptons' subpoenas are overbroad. However, the Hamptons pointed out to the District Court:

> Every subpoena at issue is restricted in time and requests records of telephone calls only made "after January 1, 2009." *As for content restrictions, by the nature of what is sought, the only "content" of a telephone record is the date, time, duration,* [sic] *of the call and the telephone numbers involved in the communications*. There is no revelation of any substance of any communication that would cause annoyance, embarrassment, or oppression to anyone. The expense to defendants is nonexistent.

ER 133 (emphasis added).

The scope of the Hamptons' subpoenas is fully appropriate in light of the Hamptons' well-pleaded factual allegations in the Third Amended Complaint. The

Hamptons subpoenaed five years of phone records because Appellees' illegal activities commenced in late 2008 and have continued through the present. *See* ER 206 ¶ 13 (Trackwell, Steen, and WCSO submitted false reports "from 2008 to the present"); ER 206-208 ¶ 15 (Trackwell attempted to collect the "debt" "between September 1, 2008 and the present"); ER 208 ¶ 17 (Steen, WCSO, and Wallowa County conspired with and assisted Trackwell "[f]rom July 1, 2009 to the present"); *and* ER 208-209 ¶ 19 (Castilleja conspired with other Appellees "from 2011 to the present").

The Hamptons have a specific factual basis for subpoenaing Appellees' phone records. As the Hamptons pointed out to the District Court, "Trackwell and Steen have exchanged telephone calls, or attempted to do so, an incredible number of times. As an example, for the six month period from June to December, 2011 they exchanged or attempted to exchange approximately 2,000 calls. (That is an average of ten such calls every day)." ER 129 (citing ER 95). Moreover, Trackwell was asked whether he tended "to conduct much business or much of your investigation by phone." ER 97. Trackwell responded: "Yes. I'm on the phone 24.7. . . . And that's, I'm on the phone all the time." *Id.* Steen agreed: "He's [Trackwell] made so many phone calls …. we're talking a lot of phone calls here." ER 88, (Dep. of Fred Steen). The Hamptons' well-pleaded allegations and the

material evidence in the record demonstrate that the Hamptons' subpoenas are not overbroad.

### c. The Hamptons' subpoenas are not an invasion of privacy.

Appellees asserted that "[t]he material contained in the requested telephone records is personal, and its disclosure would unreasonably invade the individual defendants' privacy." ER 157. However, the Hamptons explained that they did not seek personal information that would result in an unreasonable invasion of privacy:

> [T]he only "content" of a telephone record is the date, time, duration, [sic] of the call and the telephone numbers involved in the communications. There is no revelation of any substance of any communication that would cause annoyance, embarrassment, or oppression to anyone.

ER 133.

Appellees argued that "*all* materials relating to the [subpoenaed] telephone numbers" contain information "clearly of a personal nature." ER 157. This is incorrect. Public officials, such as Steen, Castilleja, and Rogers, routinely conduct public business on their own cell phones – and the Hamptons presented substantial evidence indicating that Steen and Trackwell were in constant communication on the phone. *See* ER 123-132. In fact, phone records confirm that Trackwell and Steen called each other numerous times on October 21, 2011, when Trackwell was stalking one of the Hamptons' family members, which was one of the actual invasions of privacy in this case. ER 96. The record simply does not support

Appellees' assertion that the Hamptons' subpoenas would unreasonably invade their privacy.

### d. The District Court quashed the Hamptons' subpoenas on grounds not raised by Appellees.

Without any meaningful explanation, the District Court stated that the Hamptons' subpoenas were "unduly burdensome." ER 18. However, Appellees never argued specifically that the Hamptons' subpoenas were "unduly burdensome" under Federal Rule of Civil Procedure 45(d)(3)(A)(iv). Rather, Appellees' motion to quash cited Rule 45(d)(3)(A)(iii) (disclosure of privileged or other protected matter). *See* ER 156. Appellees did cite Rule 45(d)(3)(A)(iv) in passing to support their assertion that the Hamptons "are not entitled to go on a 'fishing expedition' by means of broad discovery requests." ER 158. However, a passing citation to the Rule does not satisfy Appellees' burden to demonstrate that the Hamptons' subpoenas were unduly burdensome. This Court does not "hold that the subpoenas are overbroad or unduly burdensome absent a showing . . . of additional support for this position." *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997). Because the District Court held that the Hamptons' subpoenas were unduly burdensome without any "additional support for this position," the District Court abused its discretion in quashing the Hamptons' subpoenas. *See Id.*

**I. The District Court abused its discretion by entering a pre-filing order against the Hamptons.**

The District Court's pre-filing order states:

> "All filings from [Hamptons] ... in alleged connection with LLOYD TRACKWELL, JR., aka Lloyd R. Trackwell, aka Lloyd Ray Trackwell, individually and as an agent an informant for Wallowa County and Wallowa County Sheriff's Office, SHALL BE REVIEWED BY THIS COURT AND ORDERED FILED ONLY IF SUCH FILINGS ARE DEEMED NOT FRIVOLOUS OR REPETITIVE."

> "Specifically, the court notes the extensive repetitive and redundant litigation history in both federal and state court between the Hamptons and Trackwell beginning with the original complaint filed in 2008. … (listing cases).

> "This Pre-Filing Order is effectively immediately and shall remain in effect until the court otherwise directs."

ER 39-40.

Pre-filing orders are reviewed "for abuse of discretion." *Knox v. Potter*, 130 F. App'x 918, 919 (9th Cir. 2005). This Court has held that "such pre-filing orders should rarely be filed" and should "'remain very much the exception to the general rule of free access to the courts.'" *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). This Court's requirements for pre-filing orders are well-known:

> "[f]irst, the litigant must be given notice and a chance to be heard before the order is entered. Second, the district court must compile 'an adequate record for review.' Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation. Finally, the vexatious litigant order 'must be narrowly tailored to closely fit the specific vice encountered.'"

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).

First, the Hamptons were not provided with any notice or opportunity to be heard before the District Court entered its pre-filing order. If the Hamptons were to be so deprived of their vital constitutional right of access to the courts, the District Court was required, at the very least, to provide the Hamptons with notice and an opportunity to oppose the order restricting their ability to even enter the court. *See In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (so stating).

Second, the District Court entered its *Pre-Filing Order* without compiling an adequate record of the Hamptons' alleged frivolous or repetitive filings for review. "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long*, 912 F.2d at 1147. The District Court's order lists the alleged "extensive repetitive and redundant litigation." ER 39-40. Other than the mere assertion that the litigation was extensive, repetitive, and redundant, the District Court did not list any specific cases or motions that could lead the District Court to conclude that the Hamptons needed a vexatious litigant order. In fact, the Hamptons have never filed any tort actions against Trackwell's co-Appellees. As to Trackwell, the Hamptons successfully filed for a stalking order and filed this action, which was originally filed in state court, Wallowa County Circuit Court Case No. 09-09-13224. The District Court's record thus fails to support the

conclusion that the Hamptons' filings "are so numerous or abusive that they should be enjoined." *Id.* at 1148.

Third, the District Court failed to make any substantive findings about Appellants' allegedly frivolous or repetitive filings. "To make such a finding, the district court needs to look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *Id.* It appears that the District Court did not examine the content of any of the Hamptons' filings. If the District Court had done so, that court would have discovered that the Hamptons have defended themselves against Steen's and Trackwell's vexatious lawsuits, but defending themselves against Appellees' vexatious lawsuits does not make the Hamptons vexatious litigants. In fact, several years ago, the Hamptons propounded a generous offer to Trackwell to resolve this litigation through a mutual release of claims, without requiring any payment from Trackwell. ER 110 at § 3(E). Trackwell rejected the Hamptons' offer, and has ceaselessly continued to use litigation to harass the Hamptons, the Hamptons' attorneys, and many others, including Fred Steen, Trackwell's co-Appellee.[13] The Hamptons have only sought

---

[13] The Court may take judicial notice of related filings in the district court. *See* Fed. R. Evid. 201(b); *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) ("[A] court may take judicial notice of court records in another case"). Trackwell has allegedly assigned his claims to Mary Wickenkamp (aka Mary Wickenkamp Trackwell, *see* ER 205). On February 19, 2015, Wickenkamp filed suit against the Hamptons and their attorneys. *See Mary Wickenkamp v. D.*

justice against Trackwell, the actual vexatious litigant, and his co-Appellees, who materially assisted Trackwell's "debt" collection efforts even after ABM parted ways with their erstwhile debt collector, whom ABM appropriately termed a "notorious 'busy body.'" ER 114, l.3.

Lastly, the District Court's Order was not narrowly tailored to any alleged vice on the Hamptons' part, but applied to "all filings ... in alleged connection" with Trackwell. ER 39-40. The District Court's Order "has no boundaries." *Cf. De Long,* 912 F.2d at 1148. This Court has made it clear that pre-filing "orders must be narrowly tailored to closely fit the specific vice encountered." *Id.* "Narrowly tailored orders are needed 'to prevent infringement on the litigator's right of access to the courts.'" *Id.* The District Court issued its expansive *Pre-Filing Order* without protecting the Hamptons' "access to the courts, which serves as the final safeguard for constitutional rights." *Id.* at 1149.

The District Court abused its discretion in entering its pre-filing order against the Hamptons because the order did not comply with this Circuit's requirements for pre-filing orders, in violation of the Hamptons' due process right to notice and hearing and constitutional right of access to the courts.

---

*Zachary Hostetter, et. al.,* Case No. 2:15-cv-00296-SU. On February 25, 2015, Wickenkamp filed suit against Fred Steen and others. *See Mary Wickenkamp v. Fred Steen,* Case No. 2:15-cv-00330-SU. *See* Doc. 1.

**CONCLUSION**

For all the foregoing reasons, the Hamptons ask this Court (1) to reverse the District Court's order and vacate its judgment dismissing their Third Amended Complaint, (2) to vacate the District Court's order quashing their subpoenas, and (3) to vacate the District Court's pre-filing order entered against them.

Submitted this 3rd day of April, 2015

/s/ D. Zachary Hostetter, OSB  #100541

/s/ Benjamin D. Boyd, OSB #105854

Attorneys for Appellants Bruce Hampton and Venese Hampton

# STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

**Certificate of Compliance With Type-Volume Limitation,**

**Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains <u>13,987</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type and style requirements of Fed. R. App. P. 32(a)(6) because:

   > This brief has been prepared in a proportionally spaced typeface using Microsoft Word processing program and Times New Roman, 14 pt. font.

Signature: <u>/s/ Benjamin D. Boyd</u>

Attorney for Bruce Hampton and Venese Hampton

Date:  April 3, 2015

9th Circuit Appeal No. 14-36025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using appellant CM/ECF system on April 3, 2015.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that the following participant in the case is not a registered CM/ECF user. I have mailed the foregoing document by First-Class Mail, postage prepaid to the following non-CM/ECF participant on April 3, 2015.

Mr. Lloyd Trackwell, Jr.
4830 Woodhaven Drive
Lincoln, NE 68516

Signature: /s/ Benjamin D. Boyd

Attorney for Bruce Hampton and Venese Hampton

Date: April 3, 2015